IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RYAN PATRICK SULLIVAN, | Cause No. CV 23-40-BLG-SPW-TJC |
| Petitioner, | |
| vs. | ORDER |
| JAMES SALMONSEN, WARDEN OF MONTANA STATE PRISON; AUSTIN KNUDSEN, ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

Petitioner Ryan Patrick Sullivan ("Sullivan"), a state prisoner proceeding pro se, filed a petition seeking federal habeas corpus relief under 28 U.S.C. § 2254, along with two supplements. *See* (Docs. 1, 3 & 8.) On November 29, 2023, this Court directed Sullivan to show cause as to why his petition should not be dismissed as time-barred and procedurally defaulted. (Doc. 12.) Sullivan timely responded. (Doc. 15.) For the reasons explained herein, Sullivan's petition will be dismissed.

## I.     Background/Sullivan's Claims

The procedural background of Sullivan's state court proceedings has been set forth in great detail in the Court's prior orders. *See e.g.*, (Doc. 12 at 2-5.) It will be briefly summarized herein, with additional facts provided where needed.

1

In March of 2018, Sullivan was charged in Montana's Thirteenth Judicial District, Yellowstone County, with Aggravated Assault, Strangulation of Partner or Family Member, two counts of Violation of a No Contact Order, and Tampering with a Communication Device to Obstruct. Pursuant to a plea agreement, Sullivan pled guilty to one count of Aggravated Assault. On November 23, 2018, the Court deferred imposition of sentence for five years. Sullivan did not file a direct appeal.

In October of 2019, the State filed a petition to revoke Sullivan's deferred sentence, based upon an allegation that he had violated a permanent order of protection. Following a dispositional hearing on October 1, 2020, Sullivan's deferred sentence was revoked, and he received a 20-year prison sentence, with 10 of the years suspended. The court also imposed an 8-year parole restriction. A week later, a second petition to revoke was filed. On March 20, 2021, another revocation/dispositional hearing was held. The district court reimposed the 20-year prison sentence with 10 years suspended, along with the parole restriction.

Sullivan appealed the Aggravated Assault revocation sentence, along with the revocation of a suspended sentence imposed in a separate district court matter, in which he raised various challenges, including a challenge to the calculation of his credit for time served. *See State v. Sullivan*, DA-20-0588. In January of 2023, the Montana Supreme Court affirmed Sullivan's sentences in part, and reversed and remanded in part. *State v. Sullivan*, DA-20-0588, Or. (Mont. Jan. 10, 2023.)

2

On June 12, 2023, the district court then entered an amended revocation order granting Sullivan additional credit for time served. On May 11, 2023, while represented by counsel, Sullivan filed an application for review with the Montana Sentence Review Division ("SRD"). On December 23, 2023, the SRD affirmed the district court's sentence. *See* (Doc. 15-1.)

While these revocation and appellate proceedings were pending, Sullivan had also filed a petition for postconviction relief ("PCR") challenging his revocation sentence. The PCR petition was filed on August 31, 2020. The district court ultimately denied the petition as untimely and procedurally barred. On appeal, the Montana Supreme Court agreed.

The Court found that Sullivan's claims could have been raised on direct appeal, accordingly, they were barred from review on postconviction under Mont. Code Ann. § 46-21-105(2). The Court also found that the filing was untimely because it was not filed within a year of January 22, 2019, the date on which Sullivan's underlying Aggravated Assault conviction became final. Additionally, the Court noted that while Sullivan claimed to have "newly discovered evidence" in the form of (1) a September 26, 2018, conversation with the victim in which she claimed she was pressured into filing an order of protection against him, and (2) a January 10, 2020, motion to dismiss filed by his counsel, both items were known to Sullivan prior to his revocation sentencing. Additionally, Sullivan failed to support

3

his assertion that either piece of evidence established that he was actually innocent

of the crime of Aggravated Assault. *See generally Sullivan v. Attorney General,*

Cause No. CV 21-69-BLG-SPW-TJC, Or. at 2-4 (Mont. Oct. 18, 2021).

In the instant petition, Sullivan raises challenges not to his revocation

sentence, but to the original 2018 judgment of conviction. Sullivan claims: (1) the

prosecution failed to disclose material evidence to defense counsel, specifically he

never saw the September 2018 recantation statement from A.W., nor a related

telephone transcript prior to signing the plea agreement, (Doc. 1 at 4); (2) the

prosecution failed to disclose *Brady* evidence, *id.*; (3) the prosecution made

material misstatements of facts which were used to obtain a conviction, *id.* at 6; (4)

counsel appointed for the withdrawal of plea proceedings/appellate proceedings

provided deficient performance and prejudiced the outcome, *id.* at 7; (5) his guilty

plea was induced by misrepresentation of the evidence and was not voluntarily or

intelligently made, *id.* at 14; (6) the district court judge was biased and should have

been recused, *id.* at 15; (7) newly discovered evidence supports innocence, *id.* at

16; (8) actual innocence, *id.* at 17; (8) unlawful denial of the motion to withdraw

his guilty plea, *id.* at 18; (9) the prosecution accepted a gift/bribe from a witness,

(Doc. 3 at 2); and (10) the State engaged in malicious prosecution and

subsequently retaliated against Sullivan, (*see generally* Doc. 8.) Sullivan asks this

Court to release him from his illegal conviction, and to order further proceedings to

4

"fix this miscarriage of justice." (Doc. 1 at 20.)

## II.    Statute of Limitations

The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Under § 2244(d)(1)(A), "[t]he limitation period shall run from... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." This statute further provides that direct review generally concludes, and the judgment becomes final, either upon the expiration of the time for filing a petition for writ of certiorari with the United States Supreme Court, or when the Court rules on a timely filed petition for certiorari. *Bowen v. Roe*, 188 F. 3d 1157, 1158-59 (9th Cir. 1999).

As this Court previously explained, Sullivan did not file a direct appeal within the 60 days of entry of the amended judgement, as required by Rule 4(5)(b)(i) of the Montana Rules of Appellate Procedure. Accordingly, his conviction became final when the expiration of time for seeking direct review concluded. *See* 28 U.S.C. § 2244(d)(1)(A). Thus, the statute of limitations commenced on January 22, 2019 and expired one year later. Sullivan should have filed his federal petition on or before Wednesday, January 22, 2020. He filed the instant petition on April 3, 2023, more than three years too late.[1]

---

[1] Sullivan filed a prior petition with this Court on June 12, 2021. While it appeared to be

In his response to the show cause order, Sullivan argues that his petition is timely because his limitations period did not commence until the conclusion of his SRD proceedings. (Doc. 15 at 1-2.) Sullivan relies upon *Rogers v. Ferriter*, 796 F. 3d 1009 (9th Cir. 2015), for the premise that the limitations period was tolled during the pendency of his SRD proceedings. Because the SRD did not affirm Sullivan's sentences until December 7, 2023, Sullivan argues that his filing in this Court must, therefore, be timely. (Doc. 15 at 2.) Sullivan is mistaken.

In *Rogers*, the Ninth Circuit determined that the petitioner's SRD application was "pending" during the period that the Montana Supreme Court held it in abeyance, such that it statutorily tolled the federal limitations period. *Rogers*, 796 F. 3d at 1015-16. Notably, in the wake of *Rogers*, the SRD changed the manner in which it processed applications and generally discontinued holding applications in abeyance. But it matters not for purposes of these proceedings; *Rogers* is inapplicable because Sullivan's application was not held in abeyance by the SRD.

As set forth above, Sullivan did not file his application for review with the SRD until May of 2023. That is after the time period had passed for him to file a petition challenging the original judgment of conviction. Thus, it did not serve to toll the limitations period in any fashion. Moreover, in *Branham v. Montana*, 996

---

untimely, it was dismissed without prejudice out of an abundance of caution due to the various proceedings Sullivan had pending before the state courts at that time. *Sullivan v. State*, Cause No. CV-21-69-BLG-SPW, Or. (D. Mont. Sept. 12, 2022).

6

F. 3d 959 (9ᵗʰ Cir. 2021), the Ninth Circuit held that proceedings in the SRD constituted collateral, not direct, review for purposes of determining when the federal limitations period commenced. *See Branham*, 996 F. 3d at 968. Accordingly, Sullivan's filing with the SRD has no impact on this Court's analysis of the limitations period as it relates to the original judgment of conviction entered in November of 2018. Sullivan's limitations period commenced on January 22, 2019.

Moreover, federal time is tolled while a state prisoner has a "properly filed application for State postconviction or other collateral review" pending in state court. 28 U.S.C. § 2244(d)(2). The tolling provision of § 2244(d)(2) can only pause a clock if it has not yet fully run; it cannot "revive" the limitations period once it has expired (i.e., restart the clock to zero). Thus, a state court petition for collateral review filed after the expiration of the statute of limitations does not toll the limitations period under § 2244(d)(2). *See Ferguson v. Palmateer*, 321 F. 3d 820, 823 (9ᵗʰ Cir. 2003); *Jimenez v. Rice*, 276 F. 3d 478, 482 (9ᵗʰ Cir. 2001). Accordingly, Sullivan's subsequent state filings, including his application with the SRD, filed after the federal limitations period had passed, do not serve to toll the limitations period. Sullivan's petition before this Court is untimely.

## III.    Procedural Default

Before a state prisoner may present a claim to a federal court, he must first

exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

The merits of a habeas petitioner's procedurally defaulted claims are to be reviewed only if the petitioner (i) shows cause for the default and actual prejudice as a result of the violation of federal law, or (ii) shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *McKinney v. Ryan*, 730 F. 3d 903, 913 (9th Cir. 2013). Sullivan does not dispute that his claims are procedurally defaulted. *See*, (Doc. 15 at 3-8.)

### i.      **Cause and Prejudice**

Ordinarily, "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722,

8

753 (1991). "A habeas petitioner demonstrates prejudice by establishing that the constitutional errors 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Schneider v. McDaniel*, 674 F.3d 1144, 1153 (9th Cir. 2012) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). A petitioner has the burden of proving both cause and prejudice. *Coleman*, 501 U.S. at 750. Additionally, *Coleman* established that ineffective assistance of postconviction counsel does not establish cause for the procedural default of a claim. *Id.*

Sullivan argues that the rule set out in *Martinez v. Ryan*, 566 U.S. 1 (2012), provides an avenue for this Court to excuse his procedural default and reach the merits of his claims. *See* (Doc. 15 at 4.) In *Martinez*, the Supreme Court recognized a narrow exception to the *Coleman* rule, explaining:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-collateral review proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 6-17; *see also Trevino v. Thaler*, 596 U.S. 413, 423 (finding *Martinez* applies to a procedurally defaulted trial-phase ineffective assistance claim if "the claim…was a 'substantial' claim and the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding" (quoting *Martinez*)).

9

But *Martinez* does not apply to habeas claims that do not allege the
ineffectiveness of trial counsel. *See Davila v. Davis*, 582 U.S. 521, 524-25
(2017)(explaining that the narrow exception announced in *Martinez* "treats
ineffective assistance by a prisoner's state postconviction counsel as cause to
overcome a single claim- ineffective assistance of trial counsel- in a single context-
where the State effectively requires a defendant to bring that claim in a
postconviction proceeding rather than direct appeal"). Here, Sullivan does not
allege ineffective assistance of trial counsel, thus, *Martinez* does not serve as cause
to excuse the procedural default of his claims. Additionally, while Sullivan finds
repeated fault with performance of appellate counsel, *see e.g.*, (Doc. 15 at 4-6), the
United States Supreme Court has specifically declined to extend *Martinez's* scope
to include procedurally defaulted claims of appellate counsel. *Davila*, 566 U.S. at
526-37.

Although not clear, it seems Sullivan may be attempting to use purported
ineffective assistance of appellate counsel, alleged to have occurred during his
revocation and corresponding appellate proceedings, to excuse the procedural
default of his claims. Such argument is also unpersuasive. As explained above,
"[c]ause for a procedural default exists where something external to the petitioner,
something that cannot fairly be attributed to him,…impeded his efforts to comply
with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280

(2012)(citation omitted); *Coleman*, 501 U.S. at 753. While attorney ignorance or inadvertence cannot establish cause for a procedural default, "[a]ttorney error that constitutes ineffective assistance of counsel is cause[.]" *Coleman*, 501 U.S. at 753-54; *see also Davila,* 582 U.S. at 528 ("It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel"). The ineffective assistance claim must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)(citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)).

In other words, before a federal court may consider purported ineffective assistance of appellate counsel as cause to excuse the default of the underlying habeas claims, a petitioner generally must have presented the ineffective assistance of counsel claim in a proper manner in the state court system, such as in a petition for postconviction relief, through the highest court. But Sullivan did not present his ineffective assistance of appellate counsel claim to the state courts, thus it was never properly exhausted. Accordingly, it cannot serve as cause to excuse the default of Sullivan's underlying habeas claims. The claims in Sullivan's petition are procedurally defaulted and he has not shown adequate cause to excuse the default.

### ii.    Miscarriage of Justice

Sullivan next argues that he is actually innocent, and that no reasonable juror would find him guilty of Aggravated Assault, based upon his newly discovered evidence. (Doc. 15 at 6-7.)  Under *Schlup v. Delo*, 513 U.S. 298 (1995), a petitioner seeking federal habeas review under the miscarriage of justice exception must establish his or her factual innocence of the crime and not a mere legal insufficiency. *Bousley v. U.S.*, 523 U.S. 614, 623 (1998); *Jamillo v. Stewart*, 340 F. 3d 877, 882-83 (9th Cir. 2003). ).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324; *see also Lee v. Lampert*, 653 F. 3d 929, 945 (9th Cir. 2011); *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013).  A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *McQuiggin*, 569 U.S. at 399 (*quoting Schlup*, 513 U.S at 327).  Because of "the rarity of such evidence, in virtually every case the allegation of actual innocence has been summarily rejected." *Calderon v. Thomas*, 523 U.S. 538, 559 (1998); *see also, Shumway v. Payne*, 223 F. 3d 982, 990 (9th Cir. 2000).

Sullivan does not present any newly discovered evidence to this Court; he simply reiterates the argument previously presented to the Montana Supreme

Court.  Specifically, Sullivan points to a transcript that was allegedly withheld during his state proceedings and a "recantation" from the alleged victim, M.A., in support of his claim of actual innocence.  (Doc. 15 at 5-6.)  Sullivan believes these items show that hearsay, inconsistent statements, and perjured testimony were used to obtain his conviction.  (*Id.*)  Sullivan also surmises that since a transcript was allegedly withheld, other items of evidence may have also been withheld during his state proceedings.  (*Id.* at 6.)  But Sullivan's conjecture and conclusory statements do not satisfy the threshold requirement of "new reliable evidence."  Furthermore, as set forth above, the Montana Supreme Court determined this information was known to Sullivan prior to the disposition of his revocation proceedings.  The Montana Supreme Court further found that neither piece of evidence established that he was actually innocent of the crime of conviction.  This Court agrees.

Sullivan has not presented any new reliable evidence in this Court establishing that he is actually innocent of Aggravated Assault.  Because Sullivan has failed to satisfy his burden of producing evidence of his actual innocence, he cannot pass through the *Schlup* gateway to excuse his procedural default.  *See Griffin v. Johnson*, 350 F. 3d 956, 961 (9th Cir. 2003); *Schlup*, 513 U.S. at 324. Sullivan has not demonstrated the requisite miscarriage of justice which would excuse his procedural default.

//

13

## IV.    Conclusion

The claims contained in Sullivan's petition are untimely and procedurally

defaulted without excuse.  Based upon Sullivan's response to this Court's order, he

has not demonstrated a valid basis to excuse his late filing or to set aside the

default.  Accordingly, this matter will be dismissed with prejudice.

## V.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254

Proceedings.  A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further."  *Miller-El v.

Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Where a claim

is dismissed on procedural grounds, the court must also decide whether "jurists of

reason would find it debatable whether the district court was correct in its

procedural ruling."  *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting

*Slack*, 529 U.S. at 484).

Sullivan has not made a substantial showing that he was deprived of a

constitutional right.  He has failed to make a colorable claim that his petition is

14

timely.  Similarly, he has not demonstrated the requisite cause and prejudice or

fundamental miscarriage of justice to set aside the procedural default.

Accordingly, his is petition is both procedurally defaulted and time barred.

Reasonable jurists would find no basis to encourage further proceedings.  A

certificate of appealability will be denied.

     Based on the foregoing, the Court enters the following:

## ORDER

    1.  The Petition (Doc. 1) is DISMISSED with prejudice.

    2.  The Clerk of Court is directed to enter by separate document a

judgment in favor of Respondents and against Petitioner.

    3.  A certificate of appealability is DENIED.

    DATED this _29th_ day of May, 2024.

                           Susan P. Watters
                           United States District Court